Oaeuthees, J.,
delivered the opinion -of the court.
This bill is filed by the complainant, as executor of Page P. Parker, against all who are interested under his will, or in his estate, for the construction of the will, and declaration of the rights of all the parties. The will is remarkable for its brevity and obscurity, and is as follows:
“I, Page P. Parker, being.of sound mind, and weak of body, do make this my last will and testament. It is my will that my wife, Mary H. Parker, and James E. Walsh, is to live on my farm, and also, Margaret Gourley to remain in the family free from any charge for board. It is my will, that if my wife should marry, that she is then to take one half of my estate, and the remainder to go to my lawful heirs; and in case my wife dies, then I want Miss Margaret Gourley to have five hundred dollars of my wife’s portion. It is my will that James E. Walsh shall receive $3000 of my estate, when he becomes twenty-one years old. It *390 is my wish, that Dr. James W-. Gourley serve as. administrator, and my beloved wife.
his
Page P. x Paekee. mark.
(Test.) Jas. W. Eobb,
E. Allen.”
This will was made a few hours before the death of the testator, and admitted to probate at the Hovember term, 1852, of Sumner county court. The different constructions, that it might well be supposed would be placed upon it, and the conflicting claims set up by those interested, made it necessary for his own protection, that the executor should come into a court of chancery for instructions.
The estate consisted of about 170 acres of land within three miles of Gallatin, worth about $80 per acre, a tract of thirty acres, called the Shepherd place, worth about $12 per acre, eight slaves, stock, farming utensils, &c. He had no children, but left two brothers, two. sisters, and the children of another sister, namely, Isaac, Agnes, and the said James E. Walsh. They are all made defendants,, as well as the widow, and answer, insisting upon the construction of the will most favorable to their- respective interests.
This will certainly approaches very clearly that degree of uncertainty and unintelligibility, which would authorise the courts to set it aside entirely. It affords another instance of the great impropriety of trusting to unskilful men, and waiting until the last moments of life, when disease has enfeebled both the body and mind, to perform this very important duty.
*391 It may be remarked, that we can only look to the face of the will, to ascertain the mind and intention of the maker. So the verbal declarations made before and at the time of its execution, which have been proved by witnesses in this case, cannot be regarded. Polly Weatherhead vs. Seawell, 9 Humph., 212. The will must be its own interpreter, and. nothing extraneous in a case like the present, can aid us in its construction. We think, however, that although the. ’ instrument is dark and obscure, yet by taking it altogether, and keeping in view the leading objects and purposes shadowed forth, the intention of the testator may be arrived at with reasonable certainty.
His wife was the first object of his regard — he intended to provide liberally for her. His nephew, James R. Walsh, then about three years of age, had the next place in ■ his affections and care; after him Miss Margaret Gourley, the kinswoman of his wife, who had, perhaps, been living with them, was to be provided with a home, tree of charge, and in a certain event, to receive a legacy of $500.
1. We think it clear, that his purpose was to continue his wife in the use and possession of his land and other property, his home, and every thing upon fit necessary to keep it up, as long as she might live to enjoy it, except she should see fit to marry again, and then she should have one half, and his relations the other. The difficulty is in the development of these purposes, in the face of the will. What estate does he give her in the land? and what in the personalty, if any, until, or if she does not marry? She is to live on the farm, and James R. and Margaret are to live *392 with ter. There is no limitation made to this right to live upon, and of course to use and cultivate the farm. And she is also to keep up a family, and board Margaret. The words are “ Margaret Gourley to remain in the family free of any charge for board.” So the family is still to be kept together on the farm, and Margaret is to continue in the “family,” and be‘boarded there without charge. Here is a duty and trust imposed. What constituted the family he was about to leave, and which should continue upon his “farm” and in which Margaret was to remain “and be boarded?” Most clearly, his wife and nephew, and slaves. It would be absurd to suppose he intended that his widow should live upon his land, keep up a family establishment, and board others, and be deprived of the negroes and other personal property, necessary for that purpose.
But the argument, that he did not intend to include his slaves in his provision for her, leads to this result. He has made no other disposition of them, and this is another strong circumstance to show, that he understood them to go with the land, and so designed. And in further corroboration of this idea, the law presumes that a man who undertakes to make a will, does not intend to die intestate as to any of his property. The courts have always, in conformity to this principle, construed' wills so as to embrace all the testator’s property, if the words used, by any fair interpretation, or allowable implication, will embrace it. Words^ will also be supplied, where the sense requires it, or where it is manifestly necessary to carry out the plain developed objects shown by the will, to have been had in view and arrived at by the testator.
*393 These rules and principles applied to the "will under consideration, force upon the mind the conclusion, that it' was the intention of the testator to leave the farm upon which he lived, and all the personal property upon it, to his widow, and " that the family was to be kept up by her in all respects, as it had been before. But these reasons and objects, do not require that she should have more than a life-estate, and there are no words or ends to answer, that would give her a larger or greater estate in the property. There is no disposition made of the remainder — he died intestate as to that, and it must necessarily go to his heirs and distributees, at the death of the widow.
Secondly. If the widow should marry, then it is very plainly declared, that one half of his “ estate ” is to go to her, and the other half to his relations. The words are, “it is my will, that if my wife should marry, that she is then to take one half of my estate, and the remainder to go to my lawful heirs.” The word, estate, unqualified or restricted, is always construed to embrace every description of property, real, personal and mixed. Upon the happening then of that event, whether in one or twenty years after his death, the whole of the property is to be divided, and an absolute title passes upon the division. Here is to be found another argument against the construction insisted upon, that he intended to die intestate, as to his personal property. If it is not included in the will, there is an intestacy as to that, and the title must go absolutely under the statutes of distribution, and could not be forthcoming for division on the happening of the contingency contemplated. This goes to show, also, that the estate of *394 his wife was not to be absolute to the whole property, or any part of it, except in the event of a division in case she should marry.
3. The legacy of $50.0 to Margaret Gourley, is to be paid at the death of the widow, “out of her portion.” This legacy must depend upon the contingency of the widow’s marriage. In no other event is she to have any separate portion. Without that, as we have seen, she has only a life-estate in the property, and of course, at her death, the time provided for this legacy to take effect, there is nothing upon which it can operate.
4. The legacy of $3000 to James E. Walsh, is unconditional, and vested, and to be paid out of the estate upon his arrival at Ml age. , It is not given upon the contingency of his living until he is of lawful age, but the payment only is postponed till that time. The vesting of the legacy could only be prevented by the use of the word, “if” or some other words fairly indicating an intention to affix a condition, or make it contingent. It must appear that the time is annexed to the gift and not to the payment. 2 Williams’ Ex’rs, 1051. There can be no interest till the time arrives upon this legacy, for that is the day of payment, it is not due before. But if he should die before that time, the right would pass to his personal representative. The question, however, in all such cases, must depend upon the intention of the testator, as it may be collected from the whole will, more than the use of any particular words. In this case, the words are, he “shall receive $3000, of my estate, when he becomes twenty-one years old.” In this connexion, the time can only *395 be understood as annexed to tbe period of payment, and not to tbe gift; that is unconditional, and in tbe strongest terms.
In tbe event of tbe widow’s marriage, tbis legacy must be taken out of tbe aggregate estate before tbe division. Both tbe real and personal estate are equally bound for it.
5. We see no authority in tbe will for taxing tbe body of tbe estate, with tbe education and support of James B. Walsb, tbe legatee. Tbis must be done out of tbe products of the farm, as would be tbe case if be were a member of tbe family, as a son.
At all events, there is no authority to sell tbe property for that purpose.
It is rendered unnecessary from tbe view taken above, to enter into tbe consideration of some other questions, which have been presented in the argument.
There is an intestacy as to tbe Shepherd land.
Let tbe decree be entered, modifying tbe decree of tbe chancellor, so as to conform to tbis opinion, and tbe executor instructed accordingly.